UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No.: 1:22-CV-23876

UNIQ BRANCH OFFICE MEXICO,
S.A. DE C.V., a foreign corporation,
and JACOBO HELFON DANIEL,

    *Plaintiffs,*

v.

STEEL MEDIA GROUP, LLC, a Florida limited liability company, LUIS FERNANDO RODRIGUEZ MEJIA, an individual, and MATCH HOSPITALITY, WLL, a foreign corporation, MATCH HOSPITALITY AG, a foreign corporation,

    *Defendants.*
_____/

## COMPLAINT

**COMES NOW,** Plaintiffs, UNIQ BRANCH OFFICE MEXICO, S.A. DE C.V. ("Uniq") and JACOBO HELFON DANIEL ("Helfon") (collectively referred to as "Plaintiffs"), by and through undersigned counsel, and pursuant to the Federal Rules of Civil Procedure, hereby sue Defendants, STEEL MEDIA GROUP, LLC ("Steel"), LUIS FERNANDO RODRIGUEZ MEJIA ("Rodriguez"), MATCH HOSPITALITY, WLL, ("Match WLL"), and MATCH HOSPITALITY AG

1

("Match AG") (collectively referred to as "Defendants"), and in support thereof allege as follows:

## INTRODUCTION

1. This is an action for damages. Plaintiffs suffered compensable losses when a Defendant, Steel, misappropriated funds intended to satisfy payment obligations due on luxury hospitality packages and/or tickets to the 2022 FIFA World Cup in Qatar. Rodriguez personally guaranteed all of Steel's obligations. Defendant's failures to make payments resulted in Defendants, Match WLL and Match AG, improperly retaining deposits belonging to Plaintiffs' clients. These clients have validly assigned their right to collect to Plaintiffs.

## JURISDICTION, VENUE, AND PARTIES

2. This is an action for equitable relief and damages in excess of seventy-five thousand dollars ($75,000) exclusive of interest, costs, and fees.

3. This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(a)(2). Complete diversity of citizenship exists between the Parties to this action.

4. Plaintiff, Uniq, is a foreign corporation organized under the laws of Mexico, that conducts business in the State of Florida and Miami-Dade County, and otherwise consents to the jurisdiction of this Court.

5. Plaintiff, Helfon, is a resident of Mexico and is otherwise *sui juris*.

6. Defendant, Steel, is a Florida limited liability company, registered, authorized, and conducting business in Miami-Dade County, Florida with its principal place of business located at 1221 Brickell Avenue, Suite 900, Miami, FL 33131. Upon information and belief, Steel has only one member, Rodriguez, who is a resident of Florida.

7. Defendant, Rodriguez, is an individual residing in Florida and is otherwise *sui juris*.

8. Defendant, Match WLL, is a foreign corporation organized under the laws of Qatar that conducts substantial and not isolated activity in Florida through brokers (including Steel) and holds property that was sent from Florida.

9. Defendant, Match AG, is a foreign corporation organized under the laws of Switzerland that conducts substantial and not isolated activity in Florida through brokers (including Steel) and holds property that was sent from Florida.

10. Venue is proper pursuant to 28 U.S.C. § 1391 because all causes of action accrued in Miami-Dade County, Florida.

11. All conditions precedent to the filing of this action have been met, waived, or excused.

12. Plaintiff has retained the undersigned law firm and is obligated to pay reasonable attorneys' fees as compensation for the costs and services.

## GENERAL ALLEGATIONS

13. Plaintiff, Uniq, is in the business of providing clients with luxury travel experiences and accommodations.

14. Plaintiff, Helfon, is an owner and officer of Uniq, and is generally in charge of managing the operations of Uniq.

15. Defendant, Steel, is in the business of promoting and selling packages, services, and/or experiences at world class sporting and other events.

16. Defendant, Rodriguez, is the Authorized Member and principal of Steel.

17. Defendants, Match WLL and Match AG, are in the business of providing premium and exclusive sports hospitality services which include an "ongoing responsibility for the entire operation of the FIFA Hospitality Programme" as stated on their website.

18. Uniq and Steel entered into a commission agreement (the "Commission Agreement") (attached hereto as Exhibit "A") whereby Plaintiffs would promote events, in this case the 2022 FIFA World Cup in Qatar, to clients of Uniq (the "Clients") who would then purchase tickets and hospitality packages ("World Cup Packages") through Steel, from Match WLL.

19. Steel was obligated to pay Plaintiffs commissions as compensation for promoting the events once an agreement for the purchase of World Cup Packages

was reached between the Clients and Steel. Plaintiffs promoted the World Cup Packages and procured agreements to purchase the World Cup Packages by the Clients. The Clients sent payments directly to Steel to be applied towards the purchase price of the World Cup Packages from Match WLL.

20. Steel thereafter was engaged as a broker to locate clients for the World Cup Packages, and as such agreed to purchase the World Cup Packages from Match WLL and received confirmation of purchase invoices ("Invoices") outlining payment terms and accompanied by FIFA World Cup Qatar 2022 Hospitality Offline Sales Regulations ("Hospitality Regulations") setting forth the terms and conditions that apply to the World Cup Packages.

21. Steel made the required initial deposits to Match in accordance with the Invoices using the funds provided by the Clients. However, Steel misappropriated the funds in surplus of the initial deposits and failed to make payment in full resulting in Match WLL cancelling the Clients' World Cup Packages and retaining the deposits. Upon information and belief, Match AG, the parent company of Match WLL, now holds the total or a portion of these funds. Even if Match AG does not hold such funds, as parent company it has the authority to direct funds held by Match WLL.

22. In an undated letter that Steel sent to the Clients, Steel stated that the World Cup Packages were "100% confirmed" (translated from original) but were

delayed due to administrative and logistical difficulties. This letter promised that the Clients would receive their confirmations and tickets no later than November 7, 2022.

23. On November 12, 2022, Steel and Rodriguez sent a second letter ("Nov. 12 Letter") (attached hereto as Exhibit "B") to the Clients that was notarized and signed by Rodriguez. This letter states that Steel was defrauded and was unable to make the final payments due on the World Cup Packages. Additionally, the letter claims to have initiated legal action and additional steps had been taken to raise funds to make the necessary final payments. Furthermore, in the Nov. 12 Letter, Rodriguez personally takes responsibility for all of the actions mentioned in the letter and personally guarantees refunds and compensation.

24. Rodriguez then offered a lien on a residence that he owns personally to induce Plaintiffs and the Clients into delaying litigation and enforcing their rights. Upon a title search, it was determined that the residence was already encumbered with several liens and local violations, making the offered lien worthless. The several liens were not disclosed to the Plaintiffs and were concealed when Rodriguez made the initial lien offer on his residence.

25. The Clients thereafter assigned collection rights to Plaintiffs for payment in full by Plaintiffs to the Clients of the amounts owed by Steel. As of the date of this filing, a total of one hundred six thousand one hundred seventy-six

dollars and thirty-one cents ($106,176.31) in claims have been assigned to Plaintiffs, which is attributed $10,800.00 to Helfon and $95,376.31 to Uniq. Plaintiffs reserve the right to amend this number as additional assignments are issued to Plaintiffs.

### COUNT I
### BREACH OF CONTRACT
**(Plaintiffs Against Steel and Rodriguez)**

26. Plaintiffs reallege and reincorporate by reference the allegations in paragraphs 1–25 as if fully set forth herein.

27. The Clients and Steel entered into valid contracts to purchase World Cup Packages.

28. Steel committed a material breach of such contracts by, *inter alia*, misappropriating funds designated for a specific use, failing to make payment in full to Match with those funds, and failing to deliver the World Cup Packages to the Clients.

29. The Clients suffered damages caused by Steel's breaches.

30. Rodriguez personally guaranteed Steel's obligations under these contracts, as such he is jointly liable with Steel for compensation to Plaintiff.

**WHEREFORE,** Plaintiffs pray that this Court issue judgment against Defendants, Steel and Rodriguez, for the value of the payments made by the Clients to Steel, less any refunds, plus interest thereon, costs, and fees, in favor of Plaintiffs, along with any other relief this Court deems just and proper.

## COUNT II
## FRAUDULENT INDUCEMENT
### (Plaintiffs Against Steel and Rodriguez)

31. Plaintiffs reallege and reincorporate by reference the allegations in paragraphs 1–25 as if fully set forth herein.

32. Steel and Rodriguez made false statements regarding material facts by promising to use the Clients' funds to purchase the World Cup Packages then misappropriating the funds so that the funds were not available to be used for their stated purpose.

33. Furthermore, Rodriguez stated that the World Cup Packages had been "100% confirmed" when they had not yet been secured and the deadline to make payment in full had already passed. Rodriguez then offered a personal guarantee and lien on his residence that were false by virtue of having no value.

34. Steel and Rodriguez knew or should have known that the representations were false. Steel and Rodriguez knew that the funds were misappropriated, that the deadline to make payment in full had passed, and that the World Cup Tickets were not confirmed. Rodriguez knew that he did not have sufficient assets to offer a guarantee and that his real estate was already encumbered by other senior liens.

35. Steel and Rodriguez intended that the representation induce the Clients to act on it by agreeing to purchase the World Cup Packages and sending the funds

to Steel and Rodriguez. Steel and Rodriguez intended that the representations induce the Clients and Plaintiff to delay legal proceedings and enforcement of their rights.

36. The Clients suffered damages in justifiable reliance on the representation.

**WHEREFORE,** Plaintiffs pray that this Court rescind the contracts between the Clients and Steel, and Plaintiffs and Steel and issue judgment against Steel and Rodriguez in the amount of the value of the payments made by the Clients to Steel, less any refunds, plus interest thereon, costs, and fees, in favor of Plaintiffs along with any other relief this Court deems just and proper.

## COUNT III
## CONSTRUCTIVE TRUST
**(Plaintiffs Against Steel)**

37. Plaintiffs reallege and reincorporate by reference the allegations in paragraphs 1–25 as if fully set forth herein.

38. The Clients and Steel shared a confidential relationship.

39. Through this confidential relationship, Steel made a promise to the Clients.

40. Steel promised to transfer Clients' funds to Match and transfer the Word Cup Packages back to the Clients and caused reliance thereon.

41. Defendant has been unjustly enriched by failing to deliver the World Cup Packages or return the payments to the Clients.

**WHEREFORE,** Plaintiffs pray that this Court issue judgment against Defendant, Steel, for the value of the payments made by the Clients to Steel, less any refunds, plus interest thereon, costs, and fees, in favor of Plaintiffs along with any other relief this Court deems just and proper.

### COUNT IV
### INDEMNIFICATION
### (Uniq Against Steel and Rodriguez)

42. Uniq realleges and reincorporates by reference the allegations in paragraphs 1–25 as if fully set forth herein.

43. Uniq discharged a duty owed to the Clients by providing refunds to the Clients as a result of vicarious, constructive, derivative, or technical liability due to the acts of Steel.

44. The Commission Agreement at Clause Six, Subsection J and Clause Eight obligates Steel to indemnify Uniq against all claims and lawsuits filed by the Clients or any other third party arising out of the World Cup Packages or any breaches by Steel.

45. Pursuant to the Commission Agreement at Clause Three, Subsection 6, Rodriguez is personally liable for all of Uniq's obligations under the Commission Agreement.

46. Steel should have discharged the duty satisfied by Uniq.

47. Uniq is without any fault.

48. Uniq suffered damages by discharging the liability that should be borne by Defendant.

**WHEREFORE,** Uniq prays that this Court issue judgment against Defendant, Steel, for the value of the payments made by the Clients to Steel, less any refunds, plus interest thereon, costs, and fees, in favor of Uniq, and hold Uniq harmless from all liability and fault, along with any other relief this Court deems just and proper.

## COUNT V
## INDEMNIFICATION
**(Helfon Against Steel and Rodriguez)**

49. Helfon realleges and reincorporates by reference the allegations in paragraphs 1–25 as if fully set forth herein.

50. Helfon discharged a duty owed to the Clients by providing refunds to the Clients as a result of vicarious, constructive, derivative, or technical liability due to the acts of Steel.

51. Steel should have discharged the duty satisfied by Helfon.

52. Rodriguez personally guaranteed all of Steel's obligations regarding the sale of World Cup Packages to the Clients.

53. Helfon is without any fault.

54. Helfon suffered damages by discharging the liability that should be borne by Steel and Rodriguez.

**WHEREFORE,** Helfon pays that this Court issue judgment against Defendant, Steel, for the value of the payments made by the Clients to Steel, less any refunds, plus interest thereon, costs, and fees, in favor of Helfon, and hold Helfon harmless from all liability and fault, along with any other relief this Court deems just and proper.

### COUNT VI
### SUBROGATION
### (Plaintiffs Against Steel)

55. Plaintiffs reallege and reincorporate by reference the allegations in paragraphs 1–25as if fully set forth herein.

56. Plaintiffs are subrogated to the rights of the Clients.

57. Plaintiffs made the payments to protect their own interest.

58. Plaintiffs did not act as volunteers in making the payments because the Clients made claims against Plaintiffs due to Steel's breaches.

59. Plaintiffs were not primarily liable for the amounts claimed by the Clients.

60. Plaintiffs paid off the entire amount claimed by the Clients.

61. Subrogation would not work any injustice to the rights of a third party.

62. As a result, the Plaintiffs stand in the shoes of the Clients whose claims have been discharged and thus succeeds to the right and priorities of the original creditor.

**WHEREFORE,** Plaintiffs pray that this Court issue judgment against Defendant, Steel, for the value of the payments made by the Clients to Steel, less any refunds, plus interest thereon, costs, and fees, in favor of Plaintiffs, and subrogate the rights of Clients to Plaintiffs, along with any other relief this Court deems just and proper.

<u>**COUNT VII**</u>
**TEMPORARY INJUNCTION**
**(Plaintiffs Against Match WLL and Match AG)**

63. Plaintiffs reallege and reincorporate by reference the allegations in paragraphs 1–25 as if fully set forth herein.

64. Plaintiffs will suffer irreparable harm if Match WLL and Match AG are not enjoined from moving funds segregated for the World Cup Packages purchased by Steel for the Clients, because on information and belief Steel is undercapitalized and Rodriguez does not have sufficient assets to pay his debts.

65. Plaintiffs have no adequate remedy at law against Match WLL and Match AG.

66. Plaintiffs have a substantial likelihood of success on the merits for their claims against Match WLL and Match AG for unjust enrichment.

67. A temporary injunction would serve the public interest.

**WHEREFORE,** Plaintiffs pray that this Court issue a temporary injunction against Defendants, Match WLL and Match AG, enjoining Match WLL and Match

AG from distributing, disbursing, or otherwise disposing of the deposits paid by Steel on behalf of the Clients, along with any other relief this Court deems just and proper.

## COUNT VIII
## UNJUST ENRICHMENT
### (Plaintiffs Against Match WLL and Match AG)

1. Plaintiffs reallege and reincorporate by reference the allegations in paragraphs 1–25 as if fully set forth herein.

2. Plaintiffs, through the Clients and Steel, has conferred the benefit of the deposits for the World Cup Packages on Match WLL and Match AG.

3. Match WLL and Match AG voluntarily accepted and retain the benefits conferred.

4. The circumstances render Match WLL and Match AG's retention of the benefits (*i.e.* the payments from the Clients) inequitable unless Match WLL and Match AG pays to the Plaintiffs the value of the benefits conferred by the Clients.

**WHEREFORE,** Plaintiffs pray that this Court issue judgment against Defendants, Match WLL and Match AG, for the value of the deposits made by the Clients through Steel, plus interest, costs, and fees, in favor of Plaintiffs, along with any other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby respectfully request a trial by jury on all appropriate issues so triable as raised in this Complaint.

Date: November 28, 2022

**AINSWORTH + CLANCY, PLLC**

801 Brickell Avenue, 8th Floor
Miami, Florida 33131
Telephone: (305) 600-3816
Facsimile: (305) 600-3817
*Counsel for Plaintiff*

By: /s/ Ryan Clancy
Ryan Clancy, Esq.
Florida Bar No.117650
Email: ryan@business-esq.com
Email: info@business-esq.com