United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Uniq Branch Office Mexico, S.A. de C.V., and Jacobo Helfon Daniel, Plaintiffs, <br><br> v. <br><br> Steel Media Group, LLC, and others, Defendants. | ) ) ) ) ) ) ) ) ) )    Civil Action No. 22-23876-Civ-Scola |

**Order on Defendants' Motion to Dismiss**

    The Plaintiffs accuse the Defendants of misappropriating funds intended to purchase luxury World Cup ticket packages, retaining those funds, and failing to deliver the agreed-upon tickets. Three of the four Defendants (Steel Media Group, LLC, Luis Fernando Rodriguez Mejia, and Gisela Coloma) filed a motion to dismiss the third amended complaint (Third Am. Compl., ECF No. 78) for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) due to lack of standing, improper venue under Rule 12(b)(3), and failure to state a claim upon which relief can be granted under Rule 12(b)(6). (ECF No. 85.)

    The Court **grants in part** and **denies in part** the Defendants' motion to dismiss for the reasons discussed below. (**ECF No. 85**.)

1. **Background**

    The Plaintiffs are Uniq Branch Office Mexico, S.A. de CV, a Mexican luxury travel company, and its owner and officer Jacobo Helfon Daniel. (Third Am. Compl. ¶¶ 13-14.) The following are the background facts as told in the Plaintiffs' third amended complaint. (ECF No. 78.) The Plaintiffs entered into an agreement (the "Commission Agreement") with Defendant Steel Media Group, LLC and its sole member, Defendant Luis Fernando Rodriguez Mejia, "whereby Plaintiffs would promote events, in this case the 2022 FIFA World Cup in Qatar, to [their] clients . . . who would then purchase tickets and hospitality packages" through Steel. (*Id.* ¶ 25.) Steel would then pay the Plaintiffs a percentage of the earnings. (*Id.* ¶¶ 26-27.) Steel acted as an intermediary, buying the tickets from FIFA's official seller. (*Id.* ¶¶ 24-25, 27.) However, the official seller had limited the number of ticket packages that one party could purchase, so Defendants Rodriguez, Coloma, and Garcia also purchased ticket packages on behalf of Steel. (*Id.* ¶¶ 28-29.)

In at least four cases, Uniq clients agreed to purchase World Cup ticket packages from the Defendants and made full payments, expecting to receive their ticket packages in due time. (*Id.* ¶¶ 29-32.) In fact, the Defendants would pay the official seller the initial deposits but ultimately fail to pay the full amount, causing the official seller to cancel the sales and retain the deposits. (*Id.* ¶ 36.) The Defendants first lied to Uniq and its clients about the status of the tickets and then lied about the cause of the cancellations, before offering refunds and compensation that were never paid. (*Id.* ¶¶ 36-38.)

The Plaintiffs ultimately reimbursed the clients and now demand $404,676—the amount the clients paid pursuant to their ticket purchase agreements with the Defendants. (*Id.* ¶¶ 29-32, 40.) The Plaintiffs have brought eleven claims against the Defendants:

> Count 1: Breach of contract against Steel and Rodriguez;
> Count 2: Fraudulent inducement against Steel and Rodriguez;
> Count 3: An additional instance of fraudulent inducement against Steel and Rodriguez;
> Count 4: Constructive trust against Steel;
> Count 5: Uniq's indemnification against Steel and Rodriguez;
> Count 6: Helfon's indemnification against Steel and Rodriguez;
> Count 7: Subrogation against Steel;
> Count 8: Civil conspiracy against Steel, Rodriguez, Coloma, and Garcia;
> Count 9: Unjust enrichment against Coloma;
> Count 10: Unjust enrichment against Garcia; and
> Count 11: Civil theft against Steel and Rodriguez.

The Defendants have moved to dismiss all eleven counts, arguing that the third amended complaint is deficient under Federal Rule of Civil Procedure 12(b)(1) due to lack of standing, improper venue under Rule 12(b)(3), and failure to state a claim upon which relief can be granted under Rule 12(b)(6). (Mot. to Dismiss, ECF No. 85 at 2). The Plaintiffs responded (ECF No. 89), and Defendant Coloma filed a reply (ECF No. 95).

During the pendency of the Defendants' motion to dismiss, the Court granted counsel for Defendants Steel Media and Rodriguez permission to withdraw. (ECF No. 98.) The Court stayed the case and allowed 30 days for Steel Media and Rodriguez to retain new counsel (or proceed pro se in the case of Rodriguez) and to update the Court accordingly. (*Id.*) Steel Media and Rodriguez did not comply with the Court's order and their pleadings were subsequently stricken. (ECF No. 103.) However, the Court still considers the arguments regarding the claims against Steel Media and Rodriguez in the motion to dismiss because default judgment will only be appropriate with

respect to well-pleaded allegations. *See Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Additionally, the Court notes that the Plaintiffs have voluntarily dismissed without prejudice the fourth defendant, Daniela Garcia, who had not been served or participated in the case. (ECF No. 114.) The third amended complaint only made one claim (count 10) against Garcia alone. With this background, the Court proceeds to consider the motion to dismiss.

### 2. Legal Standard

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal punctuation omitted) (quoting Fed. R. Civ. P. 8(a)(2)). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Regardless of a plaintiff's allegations, "the court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### 3. Analysis

First, the Defendants argue that the third amended complaint must be dismissed under Rule 12(b)(1) because the Plaintiffs lack standing to bring claims based on their clients' losses. Second, the Defendants argue that the claims must be dismissed because the forum selection clause in the Commission Agreement between Uniq and Steel requires the Plaintiffs to bring the claims in Mexico City. Third, the Defendants assert that the Plaintiffs fail to state a claim under Rule 12(b)(6) with respect to counts 2, 3, 4, 5, 6, 7, 8, 9, and 11. The Court addresses each argument in turn.

### A. Whether the Plaintiffs have standing on behalf of their clients under a subrogation theory

A challenge to a plaintiff's standing to bring a lawsuit is analyzed under Federal Rule 12(b)(1). *MSP Recovery Claims, Series LLC v. Amerisure Ins. Co.*, No. 20-24077-Civ, 2021 WL 358670, at *1 (S.D. Fla. Feb. 1, 2021) (Altonaga, J.). As standing is jurisdictional, it has the same effect as a dismissal for lack of subject matter jurisdiction pursuant to Federal Rule 12(b)(1). *Id.* (discussing *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1244, 1251 (11th Cir. 2008)).

In order to prove standing, a plaintiff must allege he has suffered (1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish injury in fact, a plaintiff must show that he suffered an invasion of a legally protected interest that is concrete and particularized and actual and imminent, not conjectural or hypothetical. *Id.* at 339. For an injury to be particularized, it must impact the plaintiff in a personal and individual way.

The Defendants argue that the Plaintiffs' claims must be dismissed under Rule 12(b)(1) because they lack standing to sue for another party's injuries. (Mot. to Dismiss, ECF No. 85 at 4-5.) According to the Defendants, the Plaintiffs' clients, not the Plaintiffs themselves, suffered the injuries alleged in the third amended complaint. (*Id.* at 4.) They further argue that the Plaintiffs' claim that they may acquire standing through a subrogation theory fails because the Plaintiffs volunteered to compensate the clients for their losses and therefore cannot fulfill the essential elements of an equitable subrogation. (*Id.* at 4-5.) The Plaintiffs respond that they compensated their clients involuntarily and only after the clients made claims against the Plaintiffs, enabling them to bring these claims directly against the Defendants. (Pls.' Resp., ECF No. 89 at 6.)

In certain circumstances, Florida law permits a party to acquire the right to sue for damages incurred by another. *See Certain Underwriters at Lloyds of London v. Scents Corps.*, 634 F. Supp. 3d 1114, 1116-17 (S.D. Fla. 2022) (Moreno, J.). "The doctrine of equitable subrogation is based on the policy that no person should benefit by another's loss and on the proposition of doing justice without regard to form." *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 646 (Fla. 1999). "Equitable subrogation is generally appropriate where: (1) the subrogee made the payment to protect that party's own interest; (2) the subrogee did not act as a volunteer; (3) the subrogee was not primarily liable for the debt; (4) the subrogee paid off the entire debt; and (5) subrogation would not work any injustice to the rights of a third party." *Id.*

at 646. Subrogation "is broadly applied in almost every conceivable type of transaction in which the party invoking the doctrine has been required to pay a debt for which another is primarily answerable." *Id.* "The right of subrogation is not necessarily confined to those who are legally bound to make payments, but extends as well to persons who pay the debt in self protection, since they might suffer loss if the obligation is not discharged." *W. Am. Ins. Co. v. Yellow Cab Co. of Orlando*, 495 So. 2d 204, 206 (Fla. Dist. Ct. App. 1986) (citing 12 FLA. JUR. 2d § 21 (1979)).

The Defendants do not dispute that the Plaintiffs made payments to the clients to compensate them in full for the ticket package payments, despite not being primarily liable for the debts. The Defendants also do not attempt to argue that any party would suffer injustice by virtue of the present Plaintiffs bringing the claims instead of their clients. (*See* Mot. to Dismiss, ECF No. 85 at 4-5.) Thus, whether equitable subrogation is appropriate depends on the voluntariness of the Plaintiffs' compensation of the clients.

Accepting the allegations in the third amended complaint as true, the Plaintiffs have sufficiently alleged that they made the payments to the clients involuntarily. The Plaintiffs did so to avoid legal action and thus acted involuntarily to protect their own interests. The Plaintiffs state that "the Clients made claims against Plaintiffs due to Steel's breaches," causing the Plaintiffs to make the payments. (Third Am. Compl., ECF No. 78 ¶ 83.) The Plaintiffs' payments to the clients were not voluntary and they have satisfied the requirements for bringing their claims against the Defendants under an equitable subrogation theory at the motion to dismiss stage.

However, the Court dismisses the separate count of subrogation (count 7) because it is not a separate claim but merely provides standing for the Plaintiffs' other claims. *See Universal Prop. & Cas. Ins. Co. v. Lifetime Brands, Inc.*, No. 15-14333-CIV, 2016 WL 4146529, at *4 (S.D. Fla. Mar. 9, 2016), *report and recommendation adopted sub nom. Universal Prop. & Cas. INS. Co. v. Lifetime Brands & WM Barr Co.*, No. 2:15-CV-14333, 2016 WL 1566321 (S.D. Fla. Apr. 19, 2016) (Rosenberg, J.) ("[S]ubrogation allows nothing more than a substitution of the plaintiff-party."); *Am. Integrity Ins. Co. v. Ford Motor Co.*, No. 12-CV-24165-DLG, 2013 WL 12121495, at *3 (S.D. Fla. Feb. 20, 2013) (Graham, J.). Accordingly, the Plaintiffs have sufficiently pleaded an equitable subrogation, but it serves only to establish standing rather than to support an independent claim.

### B. Whether venue is proper in the Southern District of Florida despite the forum selection clause in the Commission Agreement

The Defendants next argue that the third amended complaint should be dismissed pursuant to Rule 12(b)(3) for improper venue because the Commission Agreement between Uniq and Steel Media contains a forum selection clause that designates Mexico City as the forum for disputes "regarding the interpretation, compliance and performance" of the agreement. (Mot. to Dismiss, ECF No. 85 at 6; Third Am. Compl., Ex A, ECF No. 78-1 at 21.) The Plaintiffs disagree for two reasons. The Plaintiffs argue that, first, the Defendants have waived the forum selection clause through their participation in this litigation; and second, that the clause only applies to two of the claims because the others do not arise out of the Commission Agreement. (Pl.'s Resp., ECF No. 89 at 6-12.)

#### *(1) Whether the Defendants have waived the forum selection clause*

Although forum selection clauses are "presumptively valid and enforceable," it is well-established that parties may waive their right to invoke such a clause. *See Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009); *Carnival Corp. v. Booth*, 946 So. 2d 1112, 1114 (Fla. 3d DCA 2006) ("Contractual forum selection clauses can be waived.") (citing *Three Seas Corp. v. FFE Transp. Servs., Inc.*, 913 So. 2d 72, 74-75 (Fla. 3d DCA 2005)); *Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 n.7 (11th Cir. 2012).

Whether a party has waived a forum selection clause turns on whether they (1) "substantially participate[d] in [the] litigation to a point inconsistent with an intent to [stay in state court] and (2) whether that participation 'prejudice[d]' the opposing party." *Se. Power Grp., Inc. v. Vision 33, Inc.*, 855 F. App'x 531, 534-35 (11th Cir. 2021) (citation omitted). This is a holistic test that considers the totality of the circumstances. *See id.* at 536. As the Plaintiffs note, the Supreme Court has recently called into question the second prong of the test, but the Court need not reach the second prong here. (*See* Pls.' Resp., ECF No. 89 at 7.)

In *Vision 33*, the Eleventh Circuit concluded that a party waived a forum selection clause because it failed to invoke the clause in a motion to dismiss and propounded discovery requests: "Applying this holistic inquiry here, we conclude that Vision 33's conduct in the litigation was inconsistent with an intent to invoke the forum selection clause. We base our conclusion on three considerations: (1) Vision 33's filing of a motion to dismiss that requested the district court to dismiss Southeast's claim against Vision 33, (2) Vision 33's specific invocation, in the motion to dismiss, of the choice of law clause, which appeared beside the forum selection clause in the agreement, and (3) the fact

that Vision 33 propounded discovery requests on Southeast." *Se. Power Grp., Inc. v. Vision 33, Inc.*, No. 19-13674, 2021 WL 1818949 (11th Cir. May 6, 2021).

In contrast, here, the Defendants have raised the forum selection clause early and often and have not participated in discovery without raising the issue. Although they also filed a third-party complaint that otherwise may have indicated intent to proceed in this forum, the Defendants included an argument about the forum selection clause in the affirmative defenses section of their second filing, the answer filed on April 17, 2023. (ECF No. 56 at 13.) The Defendants also raised the argument in their first motion to dismiss, unlike the Defendants in *Vision 33*. (ECF No. 85.)

As noted above, the Court need not reach whether the Defendants' participation has prejudiced the Plaintiffs because the Defendants did not participate in the litigation to a point inconsistent with intent to keep the litigation in the forum selected in the Commission Agreement. The Court therefore continues to whether the forum selection clause governs the claims in the complaint at all.

### *(2) Whether the forum selection clause applies to the Plaintiffs' claims*

Having concluded that the Defendants did not waive the right to invoke the forum selection clause, the Court now considers whether the clause can be invoked with respect to the Plaintiffs' claims. The clause states that the "appearing parties" submit to the laws and courts of Mexico City "for everything regarding the interpretation, compliance of this Contract . . . ." (Mot. to Dismiss, ECF No. 85 at 6; Third Am. Compl., Ex A, ECF No. 78-1 at 21.)

"For a forum selection clause to apply, it must cover the claims in dispute." *Burden v. Seacrest Sch., Inc.*, No. 2:21-CV-518-SPC-NPM, 2021 WL 4710756, at *1 (M.D. Fla. Sept. 14, 2021). When interpreting similar contract language committing disputes over a contract to a particular forum, courts have found that the clause applies to breach of contract as well as any other disputes arising from the contractual relationship, including related tort claims. *See Stiles v. Bankers Healthcare Grp., Inc.*, 637 F. App'x 556, 560 (11th Cir. 2016). "Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." *Id.* at 561.

Only counts 5 and 6, which seek indemnification from Steel Media and Rodriguez for the Plaintiffs' payments to the clients, invoke the Plaintiffs' rights under the Commission Agreement. (Third Am. Compl., ECF No. 78 ¶¶ 67-79.) The Court agrees with the Defendants that the forum selection clause in that agreement therefore applies to these two claims, and the Plaintiffs do not

appear to disagree (Pls.' Resp., ECF No. 89 at 9-10). Because the forum selection clause applies to those two claims, the Plaintiffs have the burden of establishing that they should not be heard in the selected forum. *See Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). The Plaintiffs do not make any arguments to that effect, and the Court therefore dismisses counts 5 and 6.

However, the remaining claims as alleged in the complaint do not arise from the Commission Agreement and therefore are not dismissible pursuant to its forum selection clause. These claims, according to the third amended complaint, arise from the Uniq clients' agreements to purchase World Cup ticket packages from the Defendants and the Defendants' failure to deliver those tickets. (*Id.* ¶¶ 29-32.) The Defendants do not specifically address how each claim may have arisen from the Commission Agreement contract—they summarily state that "Plaintiffs' claims stem from the terms agreed upon by UNIQ and STEEL in the Commission Agreement[.]" (Mot. to Dismiss, ECF No. 85 at 9.) As the subrogation analysis above makes clear, these claims arise not from the Defendants' failure to pay the Plaintiffs their share under the Commission Agreement, but from the ticket purchase agreements between the Defendants and the Plaintiffs' clients. The Defendants do not claim that those agreements contained any agreement to litigate disputes in a certain forum, and they accordingly may be brought in the present court subject to the typical limitations. While the Commission Agreement did contain language about the Defendants' obligation to timely deliver tickets, the Court does not need to interpret the terms of that contract for the present suit, and the Plaintiffs do not seek separate damages under that provision that they would be entitled to irrespective of the misappropriation of the Clients' funds.

The Defendants' only challenges to the breach of contract claim (count 1) are lack of standing and improper venue; therefore, the claim survives dismissal. The Court proceeds to consider the Defendants' Rule 12(b)(6) arguments as to the other claims in the third amended complaint.

### C. Whether the Plaintiffs have stated a claim for fraudulent inducement against Steel Media and Rodriguez (counts 2 and 3)

Counts 2 and 3 of the third amended complaint are allegations of two separate instances of fraudulent inducement against Steel Media and Rodriguez. The first relates to the relevant Defendants' promises to use Uniq's clients' funds to purchase World Cup packages "while knowing that all of the funds would not be used to purchase the World Cup Packages but instead be used to further Defendants' fraudulent Scheme." (Third Am. Compl., ECF No. 78 ¶¶ 46-53.) According to the complaint, "From its main office in Miami,

Florida, on or about May 18, 2021, March 10, 2022, and April 4, 2022, Steel informed the Clients that it would procure World Cup Packages on the Clients' behalf . . . ." (Third Am. Compl. ¶ 33.) The second alleged fraudulent inducement took place on November 7 and 12, 2022, when Rodriguez and Steel Media made false statements to Uniq's clients about the viability of the ticket purchases after the clients had paid in full, saying that the packages were "100% confirmed" and offering personal guarantees so that Uniq's clients would not take legal action. (*Id.* ¶¶ 37, 38, 54-61.) The Defendants argue that both counts of fraudulent inducement must be dismissed because the Plaintiffs have failed to satisfy the requirements of Federal Rule of Civil Procedure 9(b) and because recovery is barred under the independent tort doctrine. (Mot. to Dismiss, ECF No. 85 at 11-14.)

To state a claim for fraudulent inducement, the Plaintiffs must plead that (1) the defendant made a false statement concerning a material fact, (2) the defendant knew that the statement was false, (3) the defendant intended that the statement induce another to act on it, and (4) there was a consequent injury by the party acting in reliance on the representation. *See Moriber v. Dreiling*, 194 So. 3d 369, 373 (Fla. 3d Dist. Ct. App. 2016); *Geico Gen. Ins. Co. v. Hoy*, 136 So. 3d 647, 651 (Fla. 2d Dist. Ct. App. 2013). As this claim sounds in fraud, the Plaintiffs must also meet the heightened pleading standard of Rule 9(b) and must allege "precisely what statements were made," "the time and place of each such statement and the person responsible for making [it]," the "content of such statements and the manner in which they misled the plaintiff," and "what the defendants obtained as a consequence of the fraud." *Durden v. Citicorp Trust Bank, FSB*, No. 3:07-cv-974-J-33JRK, 2008 WL 2098040, at *13–14 (M.D. Fla. May 16, 2008). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake," although "conditions of a person's mind," such as malice, intent, and knowledge, may be alleged generally. Fed. R. Civ. P. 9(b). Additionally, "[m]isrepresentations relating to the breaching party's performance of a contract do not give rise to any independent cause of action in tort, [where] such misrepresentations are interwoven and indistinct from the heart of the contractual agreement." *Hotels of Key Largo, Inc. v. RHI Hotels, Inc.*, 694 So. 2d 74, 78 (Fla. 3d Dist. Ct. App. 1997).

Although the Plaintiffs may have alleged the fraudulent statements with sufficient specificity to satisfy Rule 9(b), the Plaintiffs' failure to plead separate damages stemming from those statements is fatal to the fraudulent inducement claims pursuant to the independent tort doctrine. "It is . . . well settled that, for an alleged misrepresentation regarding a contract to be actionable, the damages stemming from that misrepresentation must be

independent, separate and distinct from the damages sustained from the contract's breach." *Peebles v. Puig*, 223 So. 3d 1065, 1068 (Fla. Dist. Ct. App. 2017) (citing *Rolls v. Bliss & Nyitray, Inc.*, 408 So. 2d 229, 237 (Fla. 3d Dist. Ct. App. 1981)). For both count 2 and count 3, the Plaintiffs claim only that "[t]he Clients and Plaintiffs have suffered damages in justifiable reliance on the representations." (Third Am. Compl., ECF No. 78 ¶¶ 53, 61.) However, the Plaintiffs provide no further detail on the nature of such damages, and the Court cannot conclude that they exist beyond the amount paid to the Defendants in exchange for the promised World Cup packages, as already covered by the breach of contract claim. *See BluestarExpo, Inc. v. Enis*, 568 F. Supp. 3d 1332, 1353-54 (S.D. Fla. 2021) (Scola, J.). Therefore, the Court dismisses counts 2 and 3 for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

### D. Whether the Plaintiffs have stated a claim for constructive trust against Steel Media (count 4)

The third amended complaint alleges that the Plaintiffs are entitled to a constructive trust on their unreturned funds because the Plaintiffs and Steel Media shared a confidential relationship and Steel Media has been unjustly enriched by its failure to deliver the agreed-upon ticket packages or reimburse the clients. (Third Am. Compl., ECF No. 78 at ¶¶ 62-66.)

"The doctrine of constructive trusts is a recognized tool of equity designed in certain situations to right a wrong committed and to prevent unjust enrichment of one person at the expense of another either as a result of fraud, undue influence, abuse of confidence or mistake in the transaction. *In re Powe*, 75 B.R. 387, 393 (Bankr. M.D. Fla. 1987). "Under Florida law, the remedy of a constructive trust is an extraordinary one, subject to the discretion of the court and traditional equitable defenses." *Kowalski v. Jackson Nat. Life Ins. Co.*, 981 F. Supp. 2d 1309 (S.D. Fla. 2013) (Cohn, J.) "It is well settled that the elements of a constructive trust are: "(1) a confidential relationship, by which (2) one acquires an advantage he should not, in equity and good conscience retain." *Williams v. Dept. of Health and Rehabilitative Serv.*, 522 So. 2d 951, 954 (Fla. Dist. Ct. App. 1988) (citing *Steigman v. Danese*, 502 So. 2d 463, 467 (Fla. Dist. Ct. App. 1987)). Constructive trusts are not the appropriate remedy for "the mere failure to pay a debt" and cannot be imposed on general assets. *See Bender v. CenTrust Mortg. Corp.*, 51 F.3d 1027, 1030 (11th Cir.), *opinion modified on denial of reh'g*, 60 F.3d 1507 (11th Cir. 1995).

The Defendants argue that the Plaintiffs fail to state a claim for constructive trust because no requisite confidential relationship existed and the funds in question are not specific identifiable property. (Mot. to Dismiss,

ECF No. 85 at 14-15.) The Plaintiffs assert that a confidential relationship did exist between the Plaintiffs, their clients, and the Defendants because "Plaintiffs and their clients placed their trust and confidence in Defendants . . . to procure and deliver FIFA World Cup Packages." (Pls.' Resp., ECF No. 89 at 16.) As Defendant Coloma points out in her reply, Florida law requires more. "In order for a confidential or fiduciary relationship to exist under Florida law, there must be substantial evidence showing some dependency by one party and some undertaking by the other party to advise, counsel, and protect the weaker party." *See Lanz v. Resol. Tr. Corp.*, 764 F. Supp. 176, 179 (S.D. Fla. 1991) (Moreno, J.) (citing *Cripe v. Atlantic First Nat. Bank*, 422 So. 2d 820 (Fla. 1982)). The complaint and the Plaintiffs' response lack any information that could lead the Court to conclude that there was a unique relationship of trust between the Plaintiffs' clients and the Defendants that constituted a confidential relationship rather than a routine business arrangement.

The Plaintiffs also claim that the clients' misappropriated funds constitute specific identifiable property because they were "earmarked for the purchase of FIFA World Cup Packages." (Pls.' Resp., ECF No. 89 at 16.) This is a closer question, but the Plaintiffs' argument is still unpersuasive. "A constructive trust cannot be imposed on general assets." *Bender*, 51 F.3d at 1030 (citing *Trend Setter Villas of Deer Creek v. Villas on the Green, Inc.*, 569 So. 2d 766, 768 (Fla. Dist. Ct. App. 1990)). "The fact that the amount is certain does not make an 'identifiable fund' . . . . It is necessary to show that the same monies paid . . . were to be held . . . for the benefit of" the plaintiff. *Florida Desk, Inc. v. Mitchell International, Inc.*, 817 So. 2d 1059, 1061 (Fla. 5th Dist. Ct. App. 2002). The money must at least have "retained its identity" along the payment chain, even if not held in a "separate, segregated account." *See Freestream Aircraft USA Ltd. v. Chowdry*, No. 16-CV-81232, 2018 WL 2451189, at *9 (S.D. Fla. May 31, 2018) (Matthewman, J.). While the Court is sympathetic to the Plaintiffs' argument that they cannot obtain facts necessary to identify their funds before receiving discovery, the Plaintiffs have offered no allegations that the funds missing funds were meant to be separately held or have any identifiable quality to them. (*See* Pls.' Resp., ECF No. 89 at 16-17.) The claim for constructive trust is therefore dismissed.

> **E. Whether the Plaintiffs have stated a claim for civil conspiracy against Steel Media, Rodriguez, and Coloma (count 8)**

The third amended complaint alleges that the "Defendants Steel and Rodriguez solicited funds from the Clients with the intent to misappropriate funds resulting in a breach of contract with the client (*see* Count [1]) while fraudulently concealing their true intentions (*see* Counts [2] and [3]) and by

committing Civil Theft (*See* Count [11]).” (Third Am. Compl., ECF No. 78 ¶ 90 (emphasis in original).)

Under Florida law, civil conspiracy requires that the plaintiff establish "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Cordell Consultant, Inc. Money Purchase Plan and Trust v. Abbott*, 561 F. App'x 882, 886 (11th Cir. 2014) (quoting *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. Dist. Ct. App. 1997)). "A claim for civil conspiracy can exist only if there is an actionable underlying tort or wrong." *Raimi*, 702 So. 2d at 1284.

Both parties argue in conclusory fashion that their positions on the civil conspiracy claim must succeed because of the underlying torts (or lack thereof). (Mot. to Dismiss, ECF No. 85 at 15-16; Pls.' Resp., ECF No. 89 at 17.) While neither party has offered much in the way of argument for its position, the Court dismisses the civil conspiracy claim because the underlying torts that the Plaintiff has alleged are barred by the independent tort doctrine, as discussed above with respect to fraudulent inducement and below with respect to civil theft. Even if breach of contract can serve as a predicate wrong for a civil conspiracy claim (which appears unlikely under Florida law), the claim must be dismissed because the Plaintiffs still have not alleged separate damages for the civil conspiracy claim to stand. *See Alhassid v. Bank of America, N.A.*, 60 F. Supp. 3d 1302, 1318 (S.D. Fla. 2014) (Bloom, J.) (noting that "to construe a mere breach of contract claim as a wrong or unlawful act in substantiating a civil conspiracy claim would be inconsistent with the fundamental division between contract and tort actions.") (citation and quotation omitted).

### F. Whether the Plaintiffs have stated a claim for unjust enrichment against Coloma (count 9)

The Plaintiffs have alleged unjust enrichment against Defendant Coloma on the basis that she received $122,000 intended for clients' purchase of World Cup tickets, which she improperly retained. (Third Am. Compl., ECF No. 78 ¶¶ 94-97.)

To state a claim for unjust enrichment, a plaintiff must allege that (1) the plaintiff conferred a benefit on the defendant, (2) the defendant voluntarily accepted and retained that benefit, and (3) "the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 646 (M.D. Fla. 2011).

The Defendants' only argument on the unjust enrichment claim is that it must fail because the civil conspiracy claim fails based on the facts alleged. (Mot. to Dismiss, ECF No. 85 at 16.) In her reply, Defendant Coloma adds that the unjust enrichment claim sounds in fraud and must therefore meet Rule 9(b)'s heightened pleading standard. This argument is improperly raised as Defendant Coloma argued it for the first time in the reply. *See Lage v. Ocwen Loan Servicing LLC*, 145 F. Supp. 3d 1172, 1181 (S.D. Fla. 2015) (Bloom, J.), *aff'd*, 839 F.3d 1003 (11th Cir. 2016).

Regardless, the Plaintiffs have sufficiently alleged the elements of unjust enrichment against Defendant Coloma. According to the third amended complaint, she unjustifiably accepted the clients' funds and has continued to retain the funds, depriving the clients of the World Cup tickets that they agreed to purchase and failing to reimburse the unused funds. (Third Am. Compl., ECF No. 78 ¶¶ 31, 34-36.) Taking these allegations at face value, it would be unjust to allow Defendant Coloma to retain the clients' money. As alleged, this claim is also not duplicative of a contract claim because a contract did not govern Coloma's receipt of the funds. Thus, the Plaintiffs have sufficiently pleaded a claim of unjust enrichment against Coloma.

### G. Whether the Plaintiffs have stated a claim for civil theft against Steel Media and Rodriguez (count 11)

Under Florida law, a claim for civil theft is "essentially a conversion in which the defendant acted with criminal intent." *Freeman v. Sharpe Resources Corp.*, No. 12–1584, 2013 WL 2151723, at *12 (M.D. Fla. May 16, 2013). To state a claim for civil theft, a plaintiff must allege that the defendant took the plaintiff's property intending to appropriate the property for the defendant's own use. *See id.* (citing Fla. Stat. §§ 772.11, 812.014 (2012)). The property at issue may be money "so long as it consists of specific money capable of identification." *Belford Trucking, Co., Inc. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th Dist. Ct. App. 1970). "Money is capable of identification where it is delivered at one time, by one act and in one mass, or where the deposit is special and the identical money is to be kept for the party making the deposit, or where wrongful possession of such property is obtained." *Id.*

This claim must go the same way as the other alleged torts that essentially restate the contract breach claim. In addition to the Plaintiffs' failure to allege damages separate from the contract damages, the Plaintiffs have not sufficiently alleged that the Defendants stole "specific money capable of identification," as discussed above in the context of constructive trust, and therefore have not stated a claim for civil theft.

## 4. Conclusion

For the above reasons, the Court **grants in part** and **denies in part** the Defendants' motion to dismiss the third amended complaint. (**ECF No. 85**.)

The Court **grants** the Defendants' motion with respect to counts 2 and 3 (fraudulent inducement), 4 (constructive trust), 5 and 6 (indemnification), 7 (subrogation), 8 (civil conspiracy), and 11 (civil theft). Count 10 has already been dismissed because the Defendants voluntarily dismissed Defendant Garcia from this action. (ECF No. 114.)

The Court **denies** the motion with respect to counts 1 (breach of contract) and 9 (unjust enrichment).

**Done and ordered** in Miami, Florida, on September 26, 2023.

_____
Robert N. Scola, Jr.
United States District Judge