# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

### CASE NO. 22-cv-23876 SCOLA/GOODMAN

UNIQ BRANCH OFFICE MEXICO, S.A.
DE C.V., et al.
    Plaintiffs,

v.

STEEL MEDIA GROUP, LLC et al.
    Defendants.
_____/

### REPORT AND RECOMMENDATIONS ON PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS

In this breach of contract action, Plaintiffs Uniq Branch Office Mexico, S.A. de C.V ("Plaintiff Uniq") and Jacobo Helfon Daniel ("Plaintiff Helfon") (collectively "Plaintiffs")[1] filed a motion for default judgment against Defendants Steel Media Group, LLC ("Defendant Steel") and Luis Fernando Rodriguez Mejia ("Defendant Mejia") (collectively "Defendants"). [ECF No. 131].[2] Defendants did not file a response to Plaintiffs' motion

---

[1] Plaintiff Jacobo Helfon Daniel "is an owner and officer" of Plaintiff Uniq, "and is generally in charge of managing the operations of Uniq." [ECF No. 78, ¶ 14].

[2] Plaintiffs sued four defendants total: Steel Media Group, LLC; Fernando Rodriguez Mejia; Gisela Coloma; and Daniela Garcia. *Id.* at p. 1. However, Plaintiffs filed a Notice of Voluntary Dismissal [ECF No. 114] as to Defendant Daniela Garcia and the Court consequently terminated her as a party to this action on September 26, 2023. [ECF No. 116]. Defendant Gisela Coloma remains active in this case and is not involved in this current motion dispute.

and the response deadline has now expired.

Senior United States District Judge Robert N. Scola, Jr. referred this motion to the Undersigned "for a report and recommendations, consistent with 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of the Local Magistrate Judge Rules." [ECF No. 136]. As explained below, the Undersigned **respectfully recommends** that Judge Scola **grant in part** and **deny in part** Plaintiffs' motion [ECF No. 131].

**I.     Background**

Plaintiffs entered into a contract with Defendant Steel where Plaintiffs would promote the 2022 FIFA World Cup to their clients, and their clients would in turn purchase tickets and hospitality packages ("World Cup Packages") through Defendant Steel. [ECF No. 78, ¶ 25]. After Plaintiffs' clients purchased hundreds of thousands of dollars of packages, Defendants informed them that Defendant "Steel was defrauded and unable to make the final payments due on the World Cup Packages." *Id.* at ¶¶ 29–32; 38. Plaintiffs' clients "thereafter assigned collection rights to Plaintiffs for payment in full by Plaintiffs to the [c]lients of the amounts owed by [Defendant] Steel." *Id.* at ¶ 40.

Plaintiffs amended their complaint several times, and ultimately filed an eleven-count Third Amended Complaint [ECF No. 78] alleging: breach of contract (Count I); fraudulent inducement (Counts II and III); constructive trust (Count IV); indemnification (Counts V and VI); subrogation (Count VII); civil conspiracy (Count VIII); unjust enrichment (Counts IX and X); and civil theft (Count XI). [ECF No. 78]. The Third

Amended Complaint alleges that Defendants misappropriated funds intended to purchase World Cup ticket packages, retained those funds, and failed to deliver the agreed-upon tickets. *Id.* at ¶ 1.

Defendant Mejia is Defendant Steel's general director. [ECF No. 78-2]. Defendants shared the same legal counsel. After Plaintiffs filed their Third Amended Complaint, Defendants' legal counsel filed a motion to withdraw from the case, informing the Court that he "attempted to contact [ ] Defendants on at least six occasions . . . . No response to any of the foregoing communication attempts [were] received." [ECF No. 94, ¶ 3].

In granting the Motion to Withdraw, Judge Scola held the following:

> Since a company may not litigate a matter pro se, *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985), Defendant Steel Media Group, LLC ("Steel Media"), is **directed** to retain new counsel **on or before August 26, 2023**. Steel Media's new counsel must file a notice of appearance by this deadline. **Steel Media's failure to timely retain new counsel will result in the striking of its pleadings and the entry of default against it for failing to follow Court orders**. Further, [Defendant Mejia] must notify the Court of either his retention of new counsel or his intention to proceed pro se no later than **August 26, 2023.**

[ECF No. 98, ¶ 2 (emphasis in original)].

Neither Defendant complied with Judge Scola's Order, and on September 1, 2023 Judge Scola entered an Order directing the Clerk of the Court to enter a default[3] against

---

[3] Plaintiffs filed a Motion to Strike Pleadings and Entry of Default as to the Defendants. [ECF No. 101]. Judge Scola granted that motion within this same Order.

Defendants for their failure to comply with his Order. [ECF No. 103].[4] The Clerk of the Court consequently entered the Default Order, and Judge Scola issued his Default Judgment procedures. [ECF No. 105]. Plaintiffs complied with Judge Scola's Default Judgement procedures and filed a Notice of Joint Liability. [ECF No. 110].

In their Notice of Joint Liability, Plaintiffs state that "the possibility of inconsistent liability is present as to Count VIII."[5] *Id.* at ¶ 18. "Once liability is resolved as to [Defendant] Coloma and [Defendant] Garcia regarding Count VIII for Civil Conspiracy, Plaintiffs will move for entry of a default judgment against [the Defendants] jointly within fourteen days after the resolution of liability as required by this Court's Order." *Id.* at ¶ 21. The following week, Judge Scola entered an Order granting in part and denying in part a Motion to Dismiss filed by all Defendants. [ECF Nos. 85; 115]. The Court granted the motion as to all counts except Counts I (breach of contract) and IX (unjust enrichment). Count I is brought against Defendants Steel and Mejia and Count IX is brought against only Defendant Coloma. Therefore, the Undersigned will solely address Count I below.

Plaintiffs now seek the entry of a default judgment in their favor and against Defendants, for $890,560.61 in damages, "plus interest, any applicable attorney's fees and

---

[4] Within the same Order, Judge Scola also struck Defendants' pleadings and their Answer and Affirmative Defenses [ECF No. 56] to the Amended Complaint and Third-Party Complaint.

[5] Count VIII is brought against all four Defendants.

4

costs" awarded by this Court as a result of their breach of the agreements and subsequent assignment/subrogation of the claims by [Plaintiff Uniq's] clients. [ECF No. 131, p. 9].

## II. Applicable Legal Standard

Federal Rule of Civil Procedure 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A party may then apply to the District Court for a default final judgment. Fed. R. Civ. P. 55(b)(2); *Alfa Corp. v. Alfa Mortg. Inc.*, 560 F. Supp. 2d 1166, 1173 (M.D. Ala. 2008).

A court may not enter a default final judgment based solely on the existence of a clerk's default. *Id.* at 1174. Instead, a court is required to examine the allegations to see if they are well-pleaded and present a sufficient basis to support a default judgment on the causes of action. *Id.* (citing *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).[6] Only those factual allegations that are well-pleaded are admitted in a default judgment. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

The decision whether to enter a default judgment "is committed to the discretion of the district court." *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1576 (11th Cir. 1985). Default judgments are "generally disfavored" because this Circuit has a "strong policy of determining cases on their merits." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244–

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), our appellate court held that all Fifth Circuit decisions issued before September 30, 1981 would become binding precedent in the Eleventh Circuit.

45 (11th Cir. 2015). In addition to assessing whether the complaint adequately sets forth facts to support the plaintiff's claims, a court considering the entry of a valid default judgment must "have subject-matter jurisdiction over the claims and have personal jurisdiction over the defendant." *Osborn v. Whites & Assocs. Inc.*, No. 1:20-cv-02528, 2021 WL 3493164, at *2 (N.D. Ga. May 20, 2021) (citing *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1215 & n.13 (11th Cir. 2009)).

A court may conduct a hearing on a motion for default judgment when, in order "to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2); s*ee also Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911–12 (11th Cir. 2011) (noting that Rule 55(b)(2) "leaves the decision to hold an evidentiary hearing to the court's discretion").

### III. Analysis

"[B]efore entering a default judgment, the Court must ensure that it has jurisdiction over the claims and there must be a sufficient basis in the pleadings for the judgment entered." *Tissone v. Osco Food Servs., LLC*, No. 19-CV-61358, 2021 WL 1529915, at *2 (S.D. Fla. Feb. 10, 2021), *report and recommendation adopted*, No. 19-61358-CIV, 2021 WL 870526 (S.D. Fla. Mar. 9, 2021) (citing *Nishimatsu*, 515 F.2d at 1206).

### a.     Subject-Matter Jurisdiction

Plaintiffs contend that the Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and because this "action for equitable relief and damages [is] in excess of $75,000 exclusive of interest, costs, and fees." [ECF No. 78, ¶ 2]. Diversity jurisdiction is satisfied "where the matter in controversy exceeds the sum or value of $75,000[.00], exclusive of interest and costs" and the litigants are "citizens of different States." 28 U.S.C. § 1332(a)(1).

The jurisdictional amount is satisfied here because the Third Amended Complaint alleges that the amount at issue is in excess of $75,000.00 and Plaintiffs' motion states that this action under Count I is for $890,560.61 ("and any interest, costs, and applicable attorney's fees awarded by this Court"). [ECF Nos. 78, ¶2; 131, ¶ 21]. Additionally, Plaintiffs have properly demonstrated to the Court in their Third Amended Complaint that complete diversity of citizenship exists. Therefore, the Court has original subject-matter jurisdiction over the instant action under 28 U.S.C. § 1332(a).

### b.     Personal Jurisdiction

In addition to subject-matter jurisdiction, a court must also have personal jurisdiction over each defendant. "A judgment rendered in the absence of personal jurisdiction is void and without legal effect." *Strange v. Nescio*, No. 20-80947-CV, 2021 WL 8945480, at *1 (S.D. Fla. Mar. 29, 2021) (citing *Juris v. Inamed Corp.*, 685 F.3d 1294, 1335 (11th Cir. 2012)). For this reason, "when deciding a motion for default judgment, a court

has an affirmative duty to evaluate whether it has personal jurisdiction over the defendant and may raise the issue *sua sponte*." *Id.*

"The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process. Amenability to jurisdiction means that a defendant is within the substantive reach of a forum's jurisdiction under applicable law. Service of process is simply the physical means by which that jurisdiction is asserted." *Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 855 (11th Cir. 2010) (citation omitted).

### i. Service of Process

Service of process is a jurisdictional requirement. "Generally, where service of process is insufficient, the court has no power to render judgment and the judgment is void." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003). "[W]ithout proper service of process, the district court ha[s] no power to enter a default judgment against the [defendants]." *Albert v. Discover Bank*, No. 21-12011, 2022 WL 1184405, at *1 (11th Cir. Apr. 21, 2022).

Here, Plaintiffs properly served Defendants by electronically filing the Third Amended Complaint on CM/ECF.[7] [ECF No. 78, p. 18]. Additionally, both Defendants

---

[7] When this pleading was filed, Defendants were still represented by the same legal counsel who received electronic notices of any filings made on the CM/ECF docket. Additionally, in their motion to dismiss the Third Amended Complaint, Defendants never raised the issue of service, therefore waiving that argument.

are based in Florida. *Id.* at ¶ 6 ("Defendant, Steel, is a Florida limited liability company, registered, authorized, and conducting business in Miami-Dade County, Florida with its principal place of business located at 1221 Brickell Avenue, Suite 900, Miami, FL 33131. Upon information and belief, Steel has only one member, [Defendant Mejia], who is a citizen of Florida."). "In Florida, being a resident allows an individual to be subject to jurisdiction by Florida courts. *Sanshuck v. Guzman*, No. 2:17-MC-14-FTM-99MRM, 2018 WL 8584152, at *3 (M.D. Fla. June 13, 2018) (citing *Mybusinessloan.com, LLC v. Forum Networking Events, Inc.*, No. 8:15-CV-2739-T-36JSS, 2016 WL 3919484, at *3 (M.D. Fla. June 10, 2016), *report and recommendation adopted*, No. 8:15-CV-2739-T-36JSS, 2016 WL 3906959 (M.D. Fla. July 19, 2016)).

In sum, Plaintiffs have demonstrated that this Court has both subject-matter and personal jurisdiction over Defendants.

### c. Liability

As noted above, the only count at issue is Count I (for Breach of Contract). "In order to state a cause of action for breach of contract (Count I), [Plaintiffs] must properly plead that: (1) there was a valid contract; (2) a material breach of that contract; and (3) that it sustained damages as a result of that breach." *Redwood Mgmt., LLC v. Cavu Res., Inc.*, No. 13-CV-24693, 2014 WL 12863134, at *2 (S.D. Fla. July 10, 2014), *report and recommendation adopted*, No. 13-24693-CIV, 2014 WL 12863133 (S.D. Fla. July 28, 2014)

(citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006); *see also Arnold v. McFall*, 839 F. Supp. 2d 1281 (S.D. Fla. 2011)).

"A material breach is nonperformance of contractual obligations that go to the essence of a contract such that the non-breaching party is discharged from its own obligations." *Ryder Truck Rental, Inc. v. Chanje Energy, Inc.*, No. 1:21-CV-21044, 2022 WL 769693, at *3 (S.D. Fla. Mar. 4, 2022), *report and recommendation adopted*, No. 1:21-CV-21044-JLK, 2022 WL 767114 (S.D. Fla. Mar. 14, 2022) (citing *MDS (Canada), Inc. v. Rad Source Techs., Inc.*, 822 F. Supp. 2d 1263, 1298 (S.D. Fla. 2011), *aff'd in part, question certified*, 720 F.3d 833 (11th Cir. 2013), *certified question answered*, 143 So. 3d 881 (Fla. 2014), *and aff'd*, 579 Fed. Appx. 700 (11th Cir. 2014)).

Plaintiffs' Third Amended Complaint establishes the elements for breach of contract.[8] They allege that (1) they entered into valid contracts with Defendant Steel to purchase World Cup packages; (2) Defendant Mejia personally guaranteed Defendant Steel's obligations under the contracts; (3) Defendant Steel materially breached the contracts by misappropriating funds, failing to make payments in full, and failing to deliver the World Cup Packages; and (4) Plaintiffs suffered damages as a result of the

---

[8] Plaintiffs attached a copy of the contract at issue to their Third Amended Complaint as Exhibit 1. [ECF No. 78-1]. Plaintiffs also attached a copy of a notarized communication from Defendant Mejia to Plaintiffs' clients [ECF No. 78-2], which states that Defendant Steel was "responsible for the delivery" of the World Cup Packages to Plaintiffs' clients and that its director, Luis Fernando Rodriguez Mejia, takes "100%" responsibility" for Defendant Steel's inability to complete its obligations.

breach because Plaintiffs' clients assigned their collection rights to Plaintiffs for the amounts owed to them by Defendant Steel. [ECF No. 78, ¶¶ 40–45].

Here, the well-pled allegations in the Third Amended Complaint, deemed admitted by virtue of Defendants default,[9] establish Defendants' liability for the claim asserted. Therefore, Plaintiffs have shown that Defendants are liable for breach of contract.

### d. Damages

"Once a plaintiff has established a sufficient basis for liability, the Court must conduct an inquiry to determine the appropriate damages." *Gov't Emps. Ins. Co. v. Compass Med. Ctrs. Inc.*, No. 21-CV-23623, 2022 WL 17653816, at *2 (S.D. Fla. Nov. 10, 2022), *report and recommendation adopted*, No. 21-23623-CIV, 2022 WL 17602650 (S.D. Fla. Dec. 13, 2022). Even in the default judgment context, the Court "has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). "Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 2688 at 58–59 (3d ed. 1998)).

---

[9] *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1339 (11th Cir. 2014).

Plaintiffs seek the entry of a default judgment in their favor and against Defendants, $890,560.61 in damages, "and any interest, costs, and applicable attorney's fees awarded by this Court as a result of their breach of the agreements and subsequent assignment/subrogation of the claims by [Plaintiff Uniq's] clients. [ECF No. 131]. Plaintiffs attached a sworn "Affidavit of Indebtedness" by Plaintiff Helfon to their motion. [ECF No. 131-1].

In it, he states that "[i]n order to protect Plaintiffs' reputation as luxury accommodation providers and to avoid possible legal claims against them, Plaintiffs made payments to the clients to satisfy any claims they may have against Defendants." *Id* at ¶ 10. "In exchange for the payments made, the clients either assigned their claims to Plaintiffs or Plaintiffs became subrogated to the rights to seek reimbursement from Defendants[.]" *Id.* at ¶ 11. "Plaintiffs paid the clients a total of $890,560.61 and have made a claim to Defendants for reimbursement." *Id.* at ¶ 12. Plaintiff Helfon states that the $890,560.61 originates from: $348,161.37 to Plaintiff Uniq in signed agreements; $101,350.00 to Plaintiff Uniq in subrogated claims; $206,239.96 to Plaintiff Helfon in signed agreements; and $234,809.28 to Plaintiff Helfon in subrogated claims. *Id*.

Plaintiffs' motion fails to include any supporting documentation, such as the signed agreements, proof of payment to the clients, or any details describing what was paid to whom and *by* whom. This Court cannot properly enter a judgment awarding

12

damages "without a hearing unless the amount claimed is a liquidated sum[10] or one capable of mathematical calculation." *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1543–44 (11th Cir. 1985) (quoting *United Artists Corp. v. Freeman*, 605 F.2d 857 (5th Cir. 1979) (*per curiam*))."Damages may be awarded only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Id.* (internal quotation marks omitted). Plaintiff Helfon's affidavit does not establish the necessary facts needed for the Undersigned to recommend awarding Plaintiffs the requested amount without an evidentiary hearing.

The affidavit merely mentions what is owed to each Plaintiff but does not sufficiently describe how that number was reached. For example, Plaintiff Helfon states that of the $890,560.61, $348,161.37 is attributed to Plaintiff Uniq in "signed agreements" and $206,239.96 to Plaintiff Helfon in (presumably other) "signed agreements". [ECF No. 131-1, ¶ 12]. However, there are no attachments of these signed agreements for the Undersigned to review and verify that not only is the amount mentioned accurate, but that it is not *duplicative*.

Plaintiffs' motion also requests costs and attorney's fees. However, Plaintiffs failed to provide the Undersigned with any evidence or material support in compliance with

---

[10] The contract at issue [ECF No. 78-1] does not include a liquidation clause, so the judgment awarding damages must therefore be "one capable of mathematical equation." *Adolph Coors Co.*, 777 F.2d at 1543–44.

Local Rule 7.3. The burden is on the moving party to **explain** and **justify** requested costs. *See Berenguela-Alvarado v. Castanos*, No. 19-22689-CIV, 2020 WL 7774730, at *8 (S.D. Fla. Dec. 8, 2020), *report and recommendation adopted*, 2020 WL 7770399 (S.D. Fla. Dec. 30, 2020) (declining to award costs in the absence of any "backup documentation" (citation omitted)). Therefore, to the extent Plaintiffs request an award of costs or attorney's fees, Plaintiffs must file an adequately-supported motion **separately** on the docket consistent with Local Rule 7.3.

**IV.   Conclusion**

For the reasons stated above, the Undersigned **respectfully recommends** that the Court **grant** Plaintiffs' motion [ECF No. 131] **in part** related to the issue of liability on Count I. The Court should then **deny** Plaintiffs' request for damages, attorney's fees, and costs **without prejudice**, but with leave for them to file a renewed motion providing supporting documentation (so that the Court may properly evaluate and determine the appropriate awards).

Plaintiffs must provide a copy of this Report and Recommendations to Defendants. Plaintiffs will file a notice of compliance on CM/ECF by no later than **Wednesday, March 13, 2024**.

## V. Objections

The parties will have seven (7)[11] days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with Senior United States District Judge Robert N. Scola, Jr. Each party may file a response to the other party's objection within seven (7) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on March 7, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola, Jr.
All Counsel of Record

Defendant Steel Media Group, LLC
Attn: Luis Fernando Rodriguez Mejia

---

[11]  The Undersigned is shortening the deadlines because Defendants have defaulted, and it therefore appears unlikely that they will respond in any way, including the filing of Objections.

1221 Brickell Avenue, Suite 900
Miami, FL 33131
*PRO SE*

Defendant Luis Fernando Rodriguez Mejia
1221 Brickell Avenue, Suite 900
Miami, FL 33131
*PRO SE*